URQUHART WARD AND NEW JERSEY CIVIL SERVICE COMMISSION, PETITIONER-RESPONDENTS, v. THE CITY OF CAMDEN, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1965—Decided March 19, 1965.

Before Judges CONFORD, KILKENNY and LEWIS.

*Mr. William M. Rosenblatt* argued the cause for appellant (*Mr. Joseph M. Nardi, Jr.*, City Attorney of the City of Camden, attorney).

*Mr. William C. Gotshalk* argued the cause for respondent Urquhart Ward.

*Mrs. Marilyn Loftus Schauer,* Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KILKENNY, J. A. D. This is an appeal by the City of Camden from a final decision of the New Jersey Civil Service Commission, reinstating Urquhart Ward in his position as senior plumbing inspector of the city, with full back pay, and holding "illegal" section 12.9 of the Camden Administrative Code, which requires each appointive officer and employee of the city to retire "upon attaining seventy years of age."

Ward was appointed senior plumbing inspector in May 1948 and continued in that position until his services were terminated by written notice effective July 25, 1963, given pursuant to section 12.9 of the Administrative Code. Ward's dismissal was based solely on the fact of his age and the code provision. The city makes no claim that Ward has any physical or mental disability that would interfere with the performance of his duties. So far as the record shows, the services rendered by Ward as senior plumbing inspector have always been satisfactory.

Camden is subject to the provisions of the Civil Service Act, *N. J. S. A.* 11:1–1 *et seq.,* and Ward had tenure rights thereunder. His appointment was not for a fixed term. The city contends it is operating under the Faulkner Act, *N. J. S. A.* 40:69A–1 *et seq.,* and by virtue of *N. J. S. A.* 40:69A–29 has the authority to require retirement of its employees at age 70, regardless of any tenure rights enjoyed by them under the Civil Service Act. Stated otherwise, the city argues that the Civil Service Act does not pre-empt the field of removal of employees by municipalities, and that the jurisdiction of the Civil Service Commission is restricted to cases of removal "for

cause." The city concedes that age is not *per se* a valid cause for removal of a civil service employee under the Civil Service Act. The city maintains further that mandatory retirement of a public employee at age 70 is not unreasonable, arbitrary or capricious.

Ward was not subject to any contributory pension fund law under which his retirement might have been effected. However, at the discretion of the city, he could have been retired and granted a noncontributory pension under *N. J. S. A.* 43 :8B–1 *et seq.* Ward was eligible under that statute because he was "at least 65 years of age," *N. J. S. A.* 43 :8B–4, and had "at least 15 years of employment continuously" with the city, *N. J. S. A.* 43 :8B–5. The city chose not to retire Ward under this act and had no intention of giving him any pension thereunder. This was confirmed by the city at oral argument.

■■ We are not here concerned with the wisdom of mandatory retirement at age 70. Much can be said in favor of and in opposition to such a policy. See 279 *Annals of the American Academy of Political and Social Science* 72 (1952). The single issue which requires our attention is whether our Legislature has delegated to the city the power to impose a mandatory age retirement upon its senior plumbing inspector who has enjoyed tenure protection under the Civil Service Act. The city admits that no such authority exists under that law. Superannuation is not *per se* a valid cause for the removal of an employee under the Civil Service Act. The city also concedes that Ward's retirement was not effected under any retirement pension plan statute.

■ The sole claim of statutory authority asserted by the city for establishing the policy of mandatory retirement at age 70 is *N. J. S. A.* 40 :69A–29(a). This section of the Faulkner Act gives to municipalities operating under its provisions full power to

"organize and regulate its internal affairs, and to establish alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation; * * *."

154

True, this section does give a municipality full power to fix the "tenure" of its employees, but the same statute expressly makes that power "subject to the provisions of this act or other general laws." As defined in *N. J. S. A.* 40:69A–28, a "general law" is any law or provision of law "which is by its terms applicable or available to all municipalities." The Civil Service Act is such a general law. Therefore, the power of a municipality, operating under the Faulkner Act, to fix the "tenure" of its employees is subject to the tenure rights of employees under the Civil Service Act.

The city argues that "if there exists a direct and expressed conflict between the Civil Service Act and the Faulkner Act, the latter will control." In support of that proposition, it cites *City of Newark v. Department of Civil Service*, 68 *N. J. Super.* 416 (*App. Div.* 1961), and *Raphalides v. Civil Service*, 80 *N. J. Super.* 407 (*App. Div.* 1963). In these cases we considered whether *N. J. S. A.* 40:69A–166, a section of the Faulkner Act, was in conflict with the Civil Service Act. That section provided that any person convicted of a crime involving moral turpitude would be ineligible to hold a municipal office or position in a municipality governed by the Faulkner Act, and that conviction of such an offense while in office would cause a forfeiture of such office. We held that this definite provision in the Faulkner Act, covering particular subject matter, would prevail over a general tenure provision in the Civil Service Act. *N. J. S. A.* 40:69A–166 was not so much in conflict with *Title* 11, *"Civil Service,"* as it was supplementary thereof, in that it added conviction of a crime involving moral turpitude as another "cause" for removal from office. These cases do not aid the city's position herein because they involved a clearly expressed legislative enactment about which there could be no doubt as to the legislative intent.

The city contends that *Kennedy v. City of Newark*, 29 *N. J.* 178 (1959), supports its position. In *Kennedy*, the Supreme Court upheld an ordinance of the City of Newark which required its employees to reside within the city. However, as

the court pointed out therein, that ordinance did not relate to "work requirements" or "merit and fitness." (at *p.* 190) It concerned only regulations relating to the common good. It was not in conflict with the Civil Service Act because *Civil Service Rule* 59, listing the causes for loss of tenure, includes the violation of official and reasonable local regulations.

Furthermore, in *Messano v. Bd. of Education of Jersey City*, 32 *N. J.* 561 (1960), the Supreme Court referred to the *Kennedy* case and noted that there was a distinction between a reasonable residence requirement, which employees "may satisfy while continuing in their public employment," and a mandatory retirement for age provision "which automatically terminated the plaintiff's public employment without hearing or showing of cause." For the latter, the Supreme Court held that express statutory authority is required. Since such authority was found lacking in *Messano*, the board's dismissal of Messano, its secretary, on the sole groupd that he was 65 years old, a mandatory retirement age fixed by rule of the board, was declared invalid.

In *Messano*, as here, the dismissal was without recourse to any pension. Compare *Board of Education of Jersey City v. Cuff*, 38 *N. J.* 430 (1962), wherein the board dismissed certain school employees on the ground that they had reached the board's retirement age of 65. In doing so, the board effectually retired them under *N. J. S. A.* 43:8B-1 *et seq.*, the Noncontributory Public Employees Pension Act. As the Supreme Court said:

"The Board's action was in reality a mandatory retirement for age under a uniform policy and insofar as the 5 employees in question were concerned it was a lawful retirement on pension within the terms of the pertinent pension act." (at *p.* 433)

For that reason, the dismissals in the *Cuff* case were upheld. In the instant case, the city followed the impermissible procedure pursued in *Messano*, rather than the sanctioned method adopted in *Cuff*.

■ Despite the distinction between *Messano* and *Cuff*, the Supreme Court expressed in *Messano* the basic rule in these words:

"* * * in the absence of clear and explicit statutory delegation, a municipal body has no power to impose a mandatory age retirement policy on a public employee who is discharging his duties efficiently and is protected by a general tenure enactment." (32 *N. J.*, at *p.* 563)

In doing so, it noted that the judicial decisions in other states are generally in accord with this legal position. See cases cited, 32 *N. J.*, at *p.* 563.

The retirement of public employees because of age is of great importance both to the governmental agency and the employees. Mindful of this, the Legislature has always taken the pains to fix the retirement age, both mandatory and optional, in clear and precise language. See the various statutes fixing the retirement age, both mandatory and optional, for judges, public school teachers, policemen, firemen, members of contributory pension plans, and other public employees subject to the Noncontributory Pension Fund Act, *N. J. S. A.* 43:8B–1 *et seq.* The Legislature has never left the matter of retirement for age to the unbridled discretion of a public board or body. Tenure under civil service or other law is too precious a right to be subject to annihilation for age without express legislative sanction. Absent a more clearly expressed authority to do so, we are satisfied that the Legislature never intended to convey such power by *N. J. S. A.* 40:69A–29.

As indicated above, Camden could have legally retired Ward because of his age pursuant to *N. J. S. A.* 43:8B–1 *et seq.*, as was done in *Board of Education of Jersey City v. Cuff, supra.* It chose not to do so. We are left to speculate that it did not want to give Ward the pension allowable under that statute. Yet, that pension could have been a very modest sum. The statute fixes the maximum, not the minimum, amount of the pension. Thus, instead of availing itself of the authority vested in it by *N. J. S. A.* 43:8B–1 *et seq.*, the city dismissed Ward without any pension and without legal sanction.

Accordingly, the decision of the Civil Service Commission, restoring Ward to his position as senior plumbing inspector, with full back pay, is affirmed.